# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN PAUL WILSON, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Case No. 4:16-CV-1086 NAB |
| JASON LEWIS[1], | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Kevin Wilson's ("Wilson") Petition for Writ of Habeas Corpus. [Doc. 1.] Respondent filed a response to the Petition for Writ of Habeas Corpus. [Doc.13.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 8.] For the reasons set forth below, Wilson's Petition for Writ of Habeas Corpus will be denied.

**I.  Background**

On February 12, 2012, a jury found Wilson guilty of five counts of first-degree statutory sodomy and five counts of first-degree child molestation, while acquitting Wilson on ten counts of statutory rape. (Resp't Ex. E at 95-114.) The trial court sentenced Wilson to concurrent sentences of life imprisonment for each count of statutory sodomy and 15 years imprisonment for each count of child molestation. (Resp't Ex. E at 123-136.)

The following evidence, in light most favorable to the verdict, was presented at trial:

---

[1] During the pendency of the Petition, a different person began serving as warden at the Southeastern Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Jason Lewis, the current warden, as the Respondent and remove Ian Wallace's name.

Wilson married H.D.[2]'s mother, Linda, and moved into Linda's house when H.D. was approximately seven years old. For the first few years of the marriage, Wilson and H.D. got along well. Within two years, Wilson and H.D. began fighting often and H.D. grew to hate Wilson. Sometime after H.D. turned 13, Wilson initiated sexual contact with H.D. These incidents happened twice a week for almost a year. One day, when H.D. was almost 14 years old, she told Wilson that what he was doing was wrong and the incidents stopped. H.D. told her mother about the abuse in 2011, when H.D. was 19 years old. Linda reported H.D.'s claims to the police, and Wilson was subsequently arrested. After Wilson's arrest, but before trial, he wrote letters to H.D.'s family, expressing remorse and asking for forgiveness. One letter stated, "I know I have caused a lot of pain, hurt, anger, hate, confusion, mistrust, and sorrow for every one of you." (Resp't Ex. P at 384[3]).

At trial, Wilson testified in his own defense, denying any sexual contact with H.D. (Resp't Ex. P at 515-17). Wilson also claimed that his apology letters were for the anger shown to H.D. and her family while living with them. (Resp't Ex. P at 519-521). Wilson's conviction was affirmed on direct appeal. (Resp't Ex. C). He later filed a *pro se* motion for post-conviction relief which was overruled by the motion court and affirmed by the Missouri Court of Appeals. (Resp't Ex. H).

## II.    Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91

---

[2] Because the records and transcripts include the names of minors at the time of the events at issue, the Court will refer to the Victim as H.D. E.D. Mo. L.R. 2.17(2).
[3] The page number references in the exhibits are the page numbers for the federal court entry at the top of the pages, not the original page numbers from the state court file.

2

(2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 US.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71-72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407-08). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793 (citing *Williams*, 529 U.S. at 409). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id*

## III. Discussion

Wilson presents five claims for review. First, Wilson asserts that the trial court erred in allowing the State to re-open its case after the defense had rested its case. Second, Wilson contends that the trial court erred in overruling his motion to suppress his confession to the police. Next, Wilson asserts that his trial and appellate counsel were ineffective for failing to object to the verdict

4

directors. Finally, Wilson asserts that post-conviction counsel was ineffective for "not doing everything the Petitioner asked."

## A. Double Jeopardy Claim

In his first claim, Wilson asserts that the trial court erred in allowing the State to re-open its case at the conclusion of the trial. Wilson contends that the trial court made a finding that the State had rested without presenting sufficient evidence on Counts 17 through 20 and that that ruling operated as an acquittal of those four counts. Allowing the State to present additional evidence, Wilson asserts, violates his right to be free from double jeopardy.

At the end of the prosecution's case, Wilson's counsel made a motion for judgment of acquittal at the close of the state's evidence. (Resp't Ex. P at 460.) The Court overruled the motion. (Resp't Ex. P at 461-62.) After the defense rested its case, the trial court stated the following:

> I've talked to the attorneys informally about this. After the State's motion – I mean, the defendant's motion for judgment of acquittal at the end of the State's case, which I denied, I was thinking that's somewhat interlocutory. We should do it at the close of all the evidence, too.
>
> I was thinking more about it. I looked back in my notes, and I didn't find any indication of touching of the breasts, which is the charge for the child, five child molestation counts, except for the first one where the first time they had intercourse. The victim [H.D.] testified that the defendant put his hands under her brassiere and then specifically said touched her breasts.
>
> So, I asked the court reporter to, during our last break, to look through her notes, and using keywords that she has on her computer, she wasn't able to find any other indication that [H.D.] ever said that the defendant touched her breasts, specifically during all the contact they had.
>
> So at this point, based on that evidence, I would be inclined to sustain the defendant's motion for judgment of acquittal on

5

>those - - on four of those five counts. That's my thinking at
>this time.

(Resp't Ex. P at 551-52.) The State then moved to recall H.D. and re-open the case to address the issue of whether H.D. was touched on her breast multiple times. (Resp't Ex. P at 552.) Defense counsel objected that reopening the case was improper and a violation of Wilson's constitutional rights to a fair trial and effective assistance of counsel. (Resp't Ex. P at 552-53.) The trial judge then stated:

>In allowing the State or any party to re-open, I think the fundamental purpose of these trials is to get to the truth of the matter. So, I would, in weighing this, I think that the truth is the most important matter in determining whether to reopen so that the jury has all the evidence, unless there is some fundamental procedural violation. And although there is somewhat of a violation in that the State closed its case, if you want to call it a violation, that's a rule. I just don't see that it's fundamental to the point that it would outweigh the truth-seeking ability of the Court in the whole procedure. So, I know this is over the defendant's objection. I'll allow the State to recall [H.D.] for just that one purpose.

(Resp't Ex. P at 554-55.) After further argument, the court allowed the State to re-call H.D. to the stand. H.D. returned to the stand and testified that Wilson touched her breasts with his hands over a hundred times, "every time." (Resp't Ex. P at 561.)

The Missouri Court of Appeals found that the trial court's language regarding its "inclination" to grant Wilson's motion for judgment of acquittal, followed by the permission to re-open the case, was not a final judgment of acquittal. (Resp't Ex. C at 5-6.) The court of appeals noted that Wilson was not surprised by the evidence, he had an adequate opportunity to meet the evidence, and the order of proof would not prejudice him. (Resp't Ex. C at 6.)

In federal habeas proceedings, the standard of review for evidentiary rulings is narrow because "[i]n the habeas context, rules of evidence and trial procedure are usually matters of state

law." *Bucklew v. Luebbers,* 436 F.3d 1010, 1018 (8th Cir. 2006). State court evidentiary decisions are only reviewable if the asserted error infringed a specific constitutional protection or was "of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996), *cert. denied,* 520 U.S. 1171 (1997). "To meet this burden, a habeas petitioner must show that absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers,* 475 F.3d 965, 972 (8th Cir. 2007).

The Double Jeopardy Clause of the Fifth Amendment provides, in relevant part ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; … ." U.S. CONST. amend. V. The "Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is based upon an egregiously erroneous foundation." *Evans v. Michigan*, 568 U.S. 313, 318 (2013). An acquittal encompasses any ruling that the prosecution's proof is insufficient to establish criminal liability. *Evans,* 568 U.S. at 318. "A mistaken acquittal is an acquittal nonetheless, [therefore] a verdict of acquittal … could not be reviewed on error otherwise, without putting a [defendant] twice in jeopardy, and thereby violating the Constitution." *Id.* "Thus, an 'acquittal' includes 'a ruling by the court that the evidence is insufficient to convict,' a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relate[s] to the ultimate question of innocence.'" *Id.* For example, the Eighth Circuit found that jeopardy attached when a district court judge stated unequivocally, "Motion for judgment of acquittal as a matter of law on [count] 5 is granted, exception saved." *United States v. Thompson*, 690 F.3d 977, 996 (8th Cir. 2012). In *Thompson*, the Eighth Circuit noted that the district court judge did not indicate any availability of reconsideration. *Id.*

In this case, the trial court judge did not make a ruling on Wilson's motion, but rather stated he was inclined grant it. The inclination to grant a motion and granting the motion are not the same. The trial court judge's statement does not suffice as a judgment of acquittal. Immediately after stating his inclination to grant the motion for acquittal, the parties made argument regarding whether the prosecution could reopen the case. Based on the state trial court judge's statements and the surrounding circumstances, this Court finds that the state court's consideration of this issue was not unreasonable. Therefore, the Court will deny relief on this claim.

B. **Admission of Statements to Police**

Next, Wilson asserts the trial court erred in admitting into evidence his statements to the police at trial. Wilson contends this ruling violates his right to due process, his privilege against self-incrimination and right to counsel because he requested an attorney, an attorney appeared on his behalf, and he was denied access to the attorney. Wilson further asserts he did not knowingly, voluntarily, or intelligently waive his right to speak with his attorney before questioning.

After the allegations were made by H.D., Wilson was placed under arrest by two officers from the Maplewood Police Department, Detectives Kerry Daniels and Edward Fite. (Resp't Ex. P at 9, 501.) As Wilson was being placed in the patrol car, he called out to his mother, "Mom, they're arresting me, but they won't tell me what for. Call Jack Warner." (Resp't Ex. P at 47.) The police then drove Wilson to the Maplewood Police Department and the officers immediately placed him in an interview room. (Resp't Ex. P at 9, 14, 21-22, 432.) The interview was recorded on a DVD. (Resp't Ex. P at 11, 432.) Detective Fite read Wilson his *Miranda* rights and presented Wilson with a *Miranda* form. (Resp't Ex. P at 10, 23.) Wilson did not sign the form, but Wilson verbally acknowledged that officers had read him his rights and he understood them. (Resp't Ex. P at 10-11, 23.) The officers then began questioning Wilson. At one point during questioning,

8

Wilson asked Detective Fite if he thought he needed an attorney. (Resp't Ex. P at 11.) Detective Fite responded to Wilson stating that it was [Wilson's] choice if he wanted to contact one. (Resp't Ex. P at 11). Detective Daniels testified that they did not use any threats or promises, and that Wilson coherently answered the questions. (Resp't Ex. P at 11-13.) At no point during his interaction with the officers did Wilson ask for the interview to stop. (Resp't Ex. P at 12.)

After Wilson left with the officers, Wilson's mother contacted Wilson's brother, who then contacted John "Jack" Warner, an attorney. (Resp't Ex. P at 34, 47.) After receiving the call from Wilson's brother, Warner drove to the Maplewood police station. (Resp't Ex. P at 35.) Upon Warner's arrival, he notified the receptionist that he was an attorney and was there to see Wilson. (Resp't Ex. P at 36-37.) Warner was told Wilson had just arrived and was being processed. (Resp't Ex. P at 36.) For the next three-and-a-half hours, Warner asked every 45 minutes to speak with Wilson. (Resp't Ex. P at 38.) He again was told Wilson was still being processed. (Resp't Ex. P at 38, 40.) After the interrogation had concluded, Warner met with Wilson. (Resp't Ex. P at 38.) During the interrogation, officers became aware of Warner's presence towards the "very end" of the interview. (Resp't Ex. P at 29-30.) Wilson had made incriminating statements during the interview. (Resp't Ex. P at 32-33, 515-16.) Wilson filed a motion to suppress those statements, which was denied.

The privilege against self-incrimination clause of the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself …." U.S. Const. amend. V. The Fifth Amendment's exception from compulsory self-incrimination is protected by the Fourteenth Amendment against abridgment by the states. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

In *Miranda v. Arizona*, the Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings: (1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning. *Dickerson v. United States*, 530 U.S. 428, 435 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences, is of course, admissible in evidence." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

The prosecution cannot use statements "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. The defendant's request to have an attorney present must be clear and unambiguous so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "*Miranda* warnings are required for official interrogations only where a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988). "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000). The issue before this court is whether the Missouri state court was "unreasonable in

applying these governing legal precedents to the facts of this case." *Dormire v. Wilkerson*, 249 F.3d 801, 805 (8th Cir. 2001) (citing *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000)).

There are three instances regarding the request for counsel in this case. First, the Missouri Court of Appeals found that Wilson's request to his mother to "call Jack Warner" was not a clear assertion of the right to counsel. (Resp't Ex. C at 8). The state court's finding that Wilson's directive to his mother to call Jack Warner does not constitute a request for counsel was reasonable. The directive was not made to the police officers. Further, there is no evidence that the officers knew Warner was an attorney or that Wilson was requesting counsel when he spoke to his mother.

Next, the Missouri Supreme Court found that the police department's failure to notify him that Warner was present did not make his *Miranda* waiver invalid. When a third party contacts an attorney for a defendant, the police need not make such an attorney available to the defendant without the defendant's explicit request. *Moran v. Burbine,* 475 U.S. 412, 422 (1986). The Supreme Court's decision in *Moran* established a broad principle that "an attorney's attempt to reach a suspect is not relevant to the validity of a Miranda waiver if the suspect is unaware of the attorney's efforts." *Beck v. Bowersox*, 362 F.3d 1095, 1100 (8th Cir. 2004). As stated in Moran:

> Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right. … Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Moran*, 475 U.S. at 422-23. Wilson verbally agreed that he was aware of and understood his Miranda rights. Wilson knew that he had instructed his mother to call Jack Warner and he still waived his right to have counsel present.

Finally, Wilson's question to Detective Fite asking whether he thought Wilson needed an attorney was not an unequivocal request for counsel. The U.S. Supreme Court has found that a defendant's statement "Maybe I should talk to a lawyer" was not a request for counsel. *Davis*, 512 U.S. at 462. The Eighth Circuit has also held that statements similar to Wilson's statements were not requests for counsel that required the law enforcement officer to cease questioning. *See United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014) (defendant's statements of "Should I get a lawyer at this time? … I think I should get one" and "I want my lawyer .. If you want this recorded, I want a lawyer present" were not unambiguous requests for counsel); *United States v. Havlik*, 710 F.3d 818, 820-22 (8th Cir. 2013) (defendant's statements "I don't have a lawyer. I guess I need to get one, don't I?" and "I guess you better get me a lawyer then" were not unambiguous or unequivocal requests for counsel); *Dormire*, 249 F.3d at 804 (defendant's statement, "Could I call my lawyer?" was not a clear statement that he was requesting counsel rather than asking whether he had the right to call one). Based on the foregoing, the Court finds that the state court factual findings and legal application were not unreasonable under AEDPA; therefore, relief is denied on this claim.

C. **Ineffective Assistance of Counsel**

Next, Wilson asserts the state court erred in denying his post-conviction relief motion because his trial and appellate counsel were ineffective for failing to challenge the verdict directors. He also asserts ineffective assistance of post-conviction counsel. The state motion court rejected Wilson's post-conviction claims, regarding the verdict directors, holding that the "verdict directors submitted were specific, proper, and supported by the evidence of separate and distinct acts by movant." (Resp't Ex. J at 57-58.) The Missouri Court of Appeals affirmed. (Resp't Ex. H.)

The Sixth Amendment guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. U.S. Const. amend. VI. The Sixth Amendment's right to counsel has been interpreted to mean "that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland*, 466 U.S. at 698.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In making this determination, the court should recognize that trial counsel is

13

"strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.2d 779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

"In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a 'limited and deferential review of underlying state court decisions.'" *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly

established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad,* 555 U.S. 179, 190 (2009). The petitioner "must show both that the instruction was ambiguous and that there was a 'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington,* 555 U.S. at 190-91. The jury instruction must not be judged alone, but "must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191. The pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* There being a "slight possibility" that the jury misapplied the instruction is not enough. *Id.*

In the underlying criminal case, Wilson was charged in Counts 11-15 with five counts of first-degree statutory sodomy. In Counts 16-20, Wilson was charged with five counts of first-degree child molestation. Wilson's defense at trial was that he never had any sexual contact with H.D.

The verdict directors for Counts 11 through 14 (Instructions 17, 18, 19, and 20) charged statutory sodomy based on H.D. touching Wilson's penis. (Resp't Ex. E at 82-85.) Although these

verdict directors were similarly worded, they required the jury to find that Wilson committed an act of statutory sodomy "separate and distinct" from the acts charged in the other four counts. For example, the verdict director for Count 11 (Instruction 17) provided[4]:

> As to Count 11, if you find and believe from the evidence beyond a reasonable doubt:
>
> First that between September 1, 2004 and October 28, 2005, separate and distinct from counts 12-14, …the defendant knowingly had H.D. touch the defendant's penis with her hand, and
>
> Second, that such conduct constituted deviate sexual intercourse, and
>
> Third, that at that time H.D. was a child less than fourteen years old, then you will find the defendant guilty under Count 11 of statutory sodomy in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(Resp't Ex. E at 82.)

The verdict director for Count 15 (Instruction 21) charged one instance of first-degree statutory sodomy based on Wilson placing his penis in H.D.'s mouth when she was less than 14 years old[5]. (Resp't Ex. E at 86.) The verdict directors for Counts 16 through 20 (Instructions 22,

---

[4] Verdict directors for Counts 12, 13, and 14 (Instructions 18, 19, and 20) were similarly worded except they referred to acts "separate and distinct" from the other charged counts relating to hand-to-penis contact.
[5] The verdict director for Count 15 read as follows:
>As to Count 15, if you find and believe from the evidence beyond a reasonable doubt:
>> First that between September 1, 2004 and October 28, 2005, … the defendant knowingly placed his penis in the mouth of H.D. and
>> Second, that such conduct constituted deviate sexual intercourse, and
>> Third, that at that time H.D. was a child less than fourteen years old, then you will find the defendant guilty under Count 15 of statutory sodomy in the first degree.
>> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

23, 24, 25, and 26) charged first-degree child molestation based on Wilson touching H.D.'s breasts. (Resp't Ex. E at 87-91.) Although these verdict directors were similarly worded, they required the jury to find that Wilson committed an act of child molestation "separate and distinct" from the acts charged in the other four counts. (Resp't Ex. E at 87-91.)

Instruction 27 instructed the jury that "The defendant is charged with a separate offense in each of the twenty counts submitted to you." (Resp't Ex. E at 92.) Instruction 27 further instructs, "Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count." (Resp't Ex. E at 92.)

### 1. Trial Counsel

Wilson contends that his trial counsel's failure to object to the verdict directors constituted ineffective assistance of counsel. Wilson's habeas petition asserts that the verdict directors in Counts 11-20 violated his right to a unanimous verdict of each count. The Missouri Court of Appeals rejected Wilson's claim stating, "there is nothing in the record to suggest that the jury was confused by the instructions or had not agreed on the same act or incident constituting each offense." (Resp't Ex. H at 8.) Further, the court of appeals held that the verdict directors at issue did not create any reasonable likelihood that the jury was misled or that Wilson was convicted with a non-unanimous jury. (Resp't Ex. H at 8-9.) Addressing the prejudice prong of the *Strickland* analysis, the court of appeals noted that while Wilson denied abusing H.D., the record contained his videotaped confession to the police and the apologetic letters to H.D. and her family. (Resp't Ex. H at 8.) Considering the totality of the evidence, in the record, the court of appeals held that Wilson was not prejudiced by trial counsel's failure to object to the verdict directors. (Resp't Ex. H at 8.)

Strategic choices of trial counsel are entitled to great deference. *Strickland v. Washington,* 466 U.S. at 689. In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695. This court finds that the state court findings of fact and application of *Strickland* in this case were not unreasonable. Even if Wilson, had a plausible argument regarding the verdict directors, he would be unable to establish prejudice, because the evidence of his guilt, including H.D.'s testimony, his confession to the police, and his apology letters to H.D. and her family, presented overwhelming support for the guilty verdicts. Based on the foregoing, the Court will deny relief on this claim.

### 2. Appellate Counsel

Next, Wilson asserts that appellate counsel was ineffective for failing to seek plain error review of the trial court's submission for the verdict directors for Counts 11 through 20.

"It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). "The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*." *Id.* (citations omitted). "Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997); *Pollard v. Delo*, 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012)

(citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted).

A review of Wilson's claims indicate that he has not established ineffective assistance of appellate counsel. As explained previously, the state court's legal and factual findings regarding the verdict directors were not unreasonable. Moreover, Wilson cannot establish that his claims were meritorious issues for appeal; therefore, he was not prejudiced in appellate counsel's failure to request plain error review of the claims. Therefore, the Court finds that habeas relief should be denied on this claim.

### 3. Post-Conviction Counsel

Finally, Wilson asserts that his post-conviction relief counsel was ineffective for "not doing everything Petitioner requested." The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings is not a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). This Court—as a matter of law—cannot adjudicate this claim. Therefore, the Court will deny relief on this claim.

## IV. Conclusion

Based on the foregoing, the Court finds that Wilson's requests for relief pursuant to 28 U.S.C. § 2254 are denied. The Court finds all of the state court's findings and conclusions regarding Wilson's claims were not contrary to, not do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Nor did the state court's findings result in a decision that was based on an unreasonable determination in light of the evidence presented in the state court proceedings. Because Wilson has made no

showing of a denial of a constitutional right, a certificate of appealability will not be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc 1.]

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Jason Lewis in the place of Ian Wallace as the Respondent in this action, pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

NANNETTE A. BAKER  
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of May, 2019.